Rob Bonta
Attorney General of California
R. Matthew Wise
Supervising Deputy Attorney General
Will Setrakian (SBN 335045)
Anna Ferrari (SBN 261579)
Meghan Strong (SBN 324503)
Carolyn Downs (SBN 353455)
Deputy Attorneys General
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013-1230
 Telephone: (213) 269-6668
 E-mail: William.Setrakian@doj.ca.gov
*Attorneys for Defendants Shirley N. Weber, in her official capacity, and the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **JUDICIAL WATCH, INC.; and THE LIBERTARIAN PARTY OF CALIFORNIA,**<br><br>Plaintiffs,<br><br>v.<br><br>**SHIRLEY N. WEBER, in her official capacity as California Secretary of State; and the STATE OF CALIFORNIA,**<br><br>Defendants. | 2:24-cv-03750-MCS-PVC<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEFING PER COURT REQUEST (ECF 26)**<br><br>Date: September 16, 2024<br>Time: 9:00 a.m.<br>Judge: Hon. Mark C. Scarsi<br>Action Filed: May 6, 2024 |

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 1

    I.    Plaintiffs Must Fall Within a Statute's Zone Of Interests To Have Statutory Standing To Sue ........................................................... 1

    II.   LPCA Falls Outside of the NVRA's Zone of Interests ........................ 3

        A.    The NVRA Does Not Cover LPCA's Injury ............................. 3

        B.    The Lone Appellate Case Expansively Construing the NVRA's Zone of Interests Clashes with Now-Applicable Precedent ..................................................................................... 6

    III.  Judicial Watch Lacks Article III Standing .............................................. 7

Conclusion ............................................................................................................. 9

# TABLE OF AUTHORITIES

Page

**CASES**

*Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*
   498 U.S. 517 (1991) ............................................................................... 2, 5

*Am. C.R. Union v. Phila. City Comm'rs*
   872 F.3d 175 (3d Cir. 2017) ......................................................................... 3

*Ariz. All. for Retired Ams. v. Mayes*
   — F.4th — (9th Cir. Sept. 20, 2024) ........................................................ 7, 8

*Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Fowler*
   178 F.3d 350 (5th Cir. 1999) ........................................................................ 7

*Bennett v. Spear*
   520 U.S. 154 (1997) ..................................................................................... 6

*Block v. Cmty. Nutrition Inst.*
   467 U.S. 340 (1984) ..................................................................................... 2

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*
   889 F.3d 584 (9th Cir. 2018) ........................................................................ 5

*Food & Drug Admin. v. All. for Hippocratic Med.*
   602 U.S. 367 (2024) ..................................................................................... 7

*Havasupai Tribe v. Provencio*
   906 F.3d 1155 (9th Cir. 2018) ...................................................................... 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
   572 U.S. 118 (2014) ............................................................................*passim*

*Nat'l Lab. Rels. Bd. v. SW Gen., Inc.*
   580 U.S. 288 (2017) ..................................................................................... 7

*Nielsen v. Thornell*
   101 F.4th 1164 (9th Cir. 2024) ..................................................................... 8

*Nw. Requirements Utils. v. Fed. Energy Regul. Comm'n*
   798 F.3d 796 (9th Cir. 2015) ........................................................................ 5

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Oberdorfer v. Jewkes*
   583 F. App'x 770 (9th Cir. 2014) ................................................................... 3, 7

*Pub. Int. Legal Found., Inc. v. Bellows*
   92 F.4th 36 (1st Cir. 2024) ................................................................................. 6

*Ray Charles Found. v. Robinson*
   795 F.3d 1109 (9th Cir. 2015) ........................................................................... 2

*Thompson v. N. Am. Stainless, L.P.*
   562 U.S. 170 (2011) ...................................................................................... 4, 7

*United States v. Missouri*
   535 F.3d 844 (8th Cir. 2008) ............................................................................. 3

*Viasat, Inc. v. Fed. Commc'ns Comm'n*
   47 F.4th 769 (D.C. Cir. 2022) ....................................................................... 3, 7

**STATUTES**

52 U.S.C.
   § 20501(b) .......................................................................................................... 3
   § 20507(d)(1)(B) ........................................................................................... 5, 6
   § 20507(d)(2) ..................................................................................................... 5
   § 20510(b) .......................................................................................................... 6

Administrative Procedure Act ................................................................................ 2

Lanham Act ............................................................................................................. 2

National Voter Registration Act ..................................................................... *passim*

## INTRODUCTION

Plaintiff Libertarian Party of California (LPCA) has not pleaded facts raising a plausible inference that it is an "aggrieved person" under the National Voter Registration Act (NVRA). A party may sue under a federal statute only if it falls within that law's zone of interests. The NVRA's text and structure show that its interests protect registered voters from improper removal and require states to remove ineligible voters in certain circumstances. The statute thus serves and protects two groups: voters and states. LPCA, neither a voter nor a state, asserts a different interest, claiming that Defendants have caused the party to spend excessive money in its quest for electoral success. Because this interest falls outside of the NVRA's zone of interests and mismatches the statute's structure, LPCA lacks statutory standing.

This brief takes no position on whether Judicial Watch falls within the NVRA's zone of interests because recent Supreme Court and Ninth Circuit precedent make clear that Judicial Watch lacks Article III standing.

## ARGUMENT

### I. PLAINTIFFS MUST FALL WITHIN A STATUTE'S ZONE OF INTERESTS TO HAVE STATUTORY STANDING TO SUE

For decades, federal courts "adverted to a 'prudential' branch of standing" that required courts to consider, among other things, whether "a plaintiff's complaint f[e]ll within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). In *Lexmark*, the Supreme Court explained that this zone-of-interests inquiry "does not belong" under the prudential-standing rubric. *Id.* at 127. Instead, "[w]hether a plaintiff comes within the zone of interests is an issue that requires [courts] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* (quotation omitted). Along with considering a law's text, the zone-of-interests analysis also requires a

court to consider the law's statutory structure. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 347 (1984).

This question must be answered in every case. The zone-of-interests analysis is a "requirement of general application" that Congress is presumed to "legislat[e] against the background of . . . unless it is expressly negated." *Lexmark*, 572 U.S. at 129 (quoting *Bennett v. Spear*, 520 U.S. 154, 163 (1997)). "[C]ertain statutes will show that they protect a more-than-usually 'expan[sive]' range of interests," but without such expansion, "the zone-of-interests limitation" applies. *Id.* at 129–30 (quoting *Bennett*, 520 U.S. at 164). The Supreme Court has "suggested that a heightened standard for the zone-of-interests test might apply in [] cases" outside of the frequently litigated Administrative Procedure Act context. *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1121 (9th Cir. 2015) (citing *Lexmark*, 572 U.S. at 130).

Identifying a statute's interests is simple if the law gives an "extraordinarily helpful, detailed statement of [its] purposes," as the NVRA does. *Lexmark*, 572 U.S. at 131 (discussing the Lanham Act; internal quotation omitted). If a statute "enumerate[s] purposes," a plaintiff can sue only if its cause of action "will implicate [] the Act's goal[s]." *Id.* A reviewing court cannot "conflate[] the zone-of-interests test with injury in fact" by noting just that the statute's purposes, "standing alone, plausibly relate to" the plaintiff's asserted interest. *Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 524 (1991). Instead, "[t]he particular language of the statute[]" must "provide[] support for [plaintiffs'] assertion that Congress intended to protect [their cited interest]." *Id.* at 524–25. Indeed, analyzing the law at a lofty level of generality "could deprive the zone-of-interests test of virtually all meaning." *Id.* at 529–30.

Finally, the zone-of-interests analysis provides a separate requirement from Article III standing—a single plaintiff must clear both hurdles. Plaintiffs whose causes of action fall outside of a statute's zone of interests "may well have an

2

injury-in-fact cognizable under Article III, but [] cannot invoke the protection of the" relevant law. *Lexmark*, 572 U.S. at 132. If a party presents two injuries, one satisfying Article III and the other falling within the statute's zone of interest, that plaintiff has no qualifying injury and cannot sue under the relevant statute. *Viasat, Inc. v. Fed. Commc'ns Comm'n*, 47 F.4th 769, 779 (D.C. Cir. 2022); *Oberdorfer v. Jewkes*, 583 F. App'x 770, 773 (9th Cir. 2014).

## II. LPCA FALLS OUTSIDE OF THE NVRA'S ZONE OF INTERESTS

### A. The NVRA Does Not Cover LPCA's Injury

The NVRA's "extraordinarily helpful" statement of purpose, *Lexmark*, 572 U.S. at 131 (quotation omitted), paired with the statute's structure, shows that LPCA falls outside of the interests that Congress sought to protect.

Begin with the law's purposes, embodied in the text. The NVRA's purposes are:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;
> (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;
> (3) to protect the integrity of the electoral process; and
> (4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b). The NVRA achieves these purposes by "both protect[ing] registered voters from improper removal from the rolls and plac[ing] limited requirements on states to remove ineligible voters from the rolls." *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 179 (3d Cir. 2017). The statute accordingly pursues the non-partisan, public-participation-stimulating ends it enumerates.

Only parties affected by and seeking to vindicate these principles fall within the NVRA's zone of interests. "The plain language of the NVRA provides a right of enforcement to only two categories of plaintiffs—the United States and '[a] person who is aggrieved by a violation of [the NVRA.].'" *United States v.*

3

*Missouri*, 535 F.3d 844, 851 (8th Cir. 2008) (quoting 52 U.S.C. § 20510(b)(1)). This "aggrieved" language requires more than the Article III minimum, charging the Court with assessing whether LPCA falls within the NVRA's zone of interests. *Thompson v. N. Am. Stainless, L.P.*, 562 U.S. 170, 175–76 (2011); *Lexmark*, 572 U.S. at 130.

LPCA does not seek to vindicate an NVRA interest. LPCA's pleadings repeatedly assert its interest in this suit: earning and exerting political power at a lower cost. LPCA "is devoted [to] recruiting and maintaining L[PC]A members and to electing candidates who espouse its principles to state and federal office in California." ECF No. 1 at ¶ 5. It works to further its "common political beliefs." *Id.* at ¶ 88. To do this, it "organize[s], select[s], and promote[s] the election of party standard bearers and others who promote its beliefs." *Id.* at ¶ 89. When Defendants' Motion to Dismiss posited that LPCA had an "advocacy" interest in the electoral system, LPCA set the record straight: "LPCA is a political party. Its objectives differ in crucial ways from those of issue[-]advocacy organizations." ECF No. 17 at 13. LPCA trumpeted that it "seeks political success, and above all to have its candidates win elections." *Id.* And in pursuing this goal, LPCA allegedly spends "out-of-pocket [] monetary and resource costs" due to Defendants' alleged conduct, affecting its "nuts-and-bolts electoral activities." *Id.* at 11, 16.

These activities and interests fall outside of those covered by the NVRA. Take each NVRA interest in order. First, LPCA's interest in winning elections does not implicate the statute's goal of increasing the number of eligible citizens registered to vote—instead, it wants "its candidates [to] win elections." ECF No. 17 at 13. Second, and for the same reason, LPCA's purported interest does not enhance the participation of eligible citizens as voters. Third, LPCA's interests do not protect the electoral process's integrity—LPCA seeks to "recruit[]" members and "elect[] candidates who espouse its principles," ECF No. 1 at ¶ 5, aims that do not concern electoral integrity. Fourth and finally, LPCA's interest in saving

4

money as it pursues electoral success does not serve the goal of maintaining accurate and current voter registration rolls. Simply put, LPCA sues to save money and pursue its own electoral interests, not to protect California's voter rolls. ECF No. 17 at 11–12, 16.

LPCA also cannot claim that its interests will indirectly benefit NVRA goals. Even if LPCA's election-winning and cost-cutting interests would indirectly advance a statutory purpose, that is not enough: LPCA pursues "different" "interests" in its quest for government power, making its goal "at best 'orthogonal' to the purposes of [the] statutory provision." *Nw. Requirements Utils. v. Fed. Energy Regul. Comm'n*, 798 F.3d 796, 809 (9th Cir. 2015) (quotation omitted). The Ninth Circuit has repeatedly held that economic interests differ from other statutory interests. *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 606 (9th Cir. 2018) (holding that economic interests fall outside zone of interests of statute with environmental aims); *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1166 (9th Cir. 2018) (holding that environmental and historical interests fall outside zone of interests of statute with economic aims).

LPCA's economic and political goals thus fall outside of the NVRA's textual zone of interests. LPCA's purposes do not "implicate [] the Act's goal[s]." *Lexmark*, 572 U.S. at 131. And "[t]he particular language of the statute[]" gives no "support for [LPCA's] assertion that Congress intended to protect [its cited interest]." *Air Courier Conf. of Am.*, 498 U.S. at 524–25. As discussed in prior briefing, LPCA does not have Article III standing because it lacks redressability, ECF No. 16 at 18–19, but even if it did, its complaint would fail because it "cannot invoke the protection of the" NVRA. *Lexmark*, 572 U.S. at 132.

What the NVRA's purposes demonstrate, its structure confirms. The NVRA does not immediately remove allegedly ineligible voters. Instead, if a registrant moves out of a jurisdiction, a registrar sends a notice to the registrant. 52 U.S.C. § 20507(d)(1)(B), (d)(2). A registrar cannot immediately remove a voter who does

5

1 not respond to the notice; they remove a registrant only if the registrant does not
2 respond to that notice and does not vote in one of the next two federal general
3 elections. 52 U.S.C. § 20507(d)(1)(B). By allowing voter rolls to include some
4 voters who may no longer reside at their registered address, the NVRA all but
5 ensures that a jurisdiction's voter rolls will not perfectly match its voter population.
6 LPCA's interest in paring down the voter rolls to reduce the financial burden of
7 contacting voters is thus inconsistent with the NVRA's structure and falls outside
8 the statute's zone of interests.

9       The NVRA's text and structure show that both of LPCA's causes of action fall
10 outside of the statute's zone of interests. Regarding the 8(i) cause of action,
11 LPCA's complaint does not explain why it attempted to join Judicial Watch's
12 document request in the October 2023 Notice of Violation. ECF No. 1 at ¶ 38; *see*
13 ECF No. 16 at 24 (observing that LPCA improperly "piggybacked" on Judicial
14 Watch's August 2023 record request). The face of the Complaint shows only that
15 LPCA joined the records request to further the insufficient interests described above
16 in obtaining and exerting political power at a low cost.

17       As a final point, Congress could have legislated more broadly when it drafted
18 the NVRA. Some federal statutes provide that "any person may commence a civil
19 suit." *Bennett*, 520 U.S. at 164. The NVRA does not; it provides a cause of action
20 only to a "person who is aggrieved by a violation," thereby limiting its zone of
21 interests. 52 U.S.C. § 20510(b). By enforcing the NVRA's statutory provisions,
22 the Court will give effect to Congress's considered decision-making and avoid
23 "revisit[ing] the careful balance struck by Congress in" drafting the NVRA. *Pub.*
24 *Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 55 (1st Cir. 2024).

    **B.    The Lone Appellate Case Expansively Construing the NVRA's Zone of Interests Clashes with Now-Applicable Precedent**

27       LPCA will likely seek to invoke a single out-of-circuit case from a quarter-
28 century ago that held that the NVRA "extend[ed] standing under the Act to the

6

1   maximum allowable under the Constitution" and that any plaintiff with Article III
2   standing could thus sue under the statute. *Ass'n of Cmty. Orgs. for Reform Now*
3   (*ACORN*) *v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999). But under today's law,
4   *ACORN* would come out the other way for two reasons.

5         First, *ACORN* interpreted the statutory phrase "aggrieved person" to extend
6   statutory standing to the constitutional maximum. 178 F.3d at 363. But subsequent
7   Supreme Court precedent holds that this phrasing "must be construed more
8   narrowly than the outer boundaries of Article III." *Thompson*, 562 U.S. at 175–77.

9         Second, *ACORN* relied on a now-disfavored interpretive method. *ACORN*
10  cited one Senator's view that a textual amendment maximized the statute's zone of
11  interests. 178 F.3d at 364. But modern courts understand that "[w]hat Congress
12  ultimately agrees on is the text that it enacts, not the preferences expressed by
13  certain legislators." *Nat'l Lab. Rels. Bd. v. SW Gen., Inc.*, 580 U.S. 288, 306
14  (2017). And per that text, only an "aggrieved person" may sue, limiting the zone of
15  interests to those who would vindicate the statutory purpose. *See Thompson*, 562
16  U.S. at 175–76. This Court should decline to follow or expand *ACORN*'s dated,
17  out-of-circuit analysis.

18  **III.  JUDICIAL WATCH LACKS ARTICLE III STANDING**

19        As discussed above, a party must present an injury that both falls inside the
20  statute's zone of interests and satisfies Article III. *Viasat*, 47 F.4th at 779;
21  *Oberdorfer*, 583 F. App'x at 773. The Court can set aside the closer question of
22  whether Judicial Watch seeks to vindicate a statutory purpose because it presents no
23  Article III injury. ECF No. 16 at 14–17; ECF No. 19 at 8–10.

24        Ninth Circuit precedent issued after oral argument on Defendants' Motion to
25  Dismiss further cements Judicial Watch's lack of standing. In *Arizona Alliance for*
26  *Retired Americans v. Mayes*, the Ninth Circuit distilled principles from the
27  Supreme Court's recent *Food & Drug Administration v. Alliance for Hippocratic*
28  *Medicine* opinion and applied those principles to groups seeking organizational

7

standing under the NVRA. *Ariz. All. for Retired Ams. v. Mayes*, — F.4th —, 2024 WL 4246721 (9th Cir. Sept. 20, 2024).

*Mayes* clarifies that "neither the frustration of a mission nor the diversion of resources confers [organizational] standing under Article III," and that an organization may secure standing only if it "can show that a challenged governmental action directly injures the organization's pre-existing core activities and does so *apart* from the plaintiffs' response to that governmental action." *Mayes*, 2024 WL 4246721, at *2 (second quote citing *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395–96 (2024)). In other words, an organizational plaintiff "must do more than merely claim that [a] law caused them to spend money in response to it—they must show that [the state's] actions directly harmed already-existing activities." *Id.* at *4. Nor can an organization secure standing just because government action made it spend money "to further its mission in a *different* way." *Id.* at *7.

To the extent the Ninth Circuit's past decisions on this issue were inconsistent with these principles, *Mayes* concluded that *Alliance for Hippocratic Medicine* had overruled those cases. *Id.* at *8. Among the cases overruled was *Nielsen v. Thornell*, 101 F.4th 1164 (9th Cir. 2024), on which Plaintiffs relied in opposing Defendants' Motion to Dismiss, ECF No. 17 at 17. *Mayes*, 2024 WL 4245721, at *8.[1]

Because Judicial Watch argues nothing more than that Defendants' actions caused it to divert resources, it lacks standing here.

///

///

///

///

---

[1] Judge Nguyen "strongly dissent[ed]" from the majority's standing analysis in *Mayes*. 2024 WL 4246271, at *18; *see id.* at *18–26. But the panel majority's reasoning is now binding precedent throughout this circuit.

8

# CONCLUSION

Under zone-of-interest and Article III doctrines, both LPCA and Judicial Watch lack standing. The Court should dismiss the Complaint.

Dated: October 8, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General

*/s/ Robert William*

WILL SETRAKIAN
Deputy Attorney General
*Attorneys for Defendants Shirley N. Weber, in her official capacity, and the State of California*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 2,625 words, which:

__ complies with the word limit of L.R. 11-6.1.

_X_ complies with the word limit set by ECF No. 26.

Dated: October 8, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California

*/s/ Robert William*

WILL SETRAKIAN
Deputy Attorney General
*Attorneys for Defendants Shirley N. Weber, in her official capacity, and the State of California*

# CERTIFICATE OF SERVICE

| Case Name: | **Judicial Watch, Inc. v. Shirley N. Weber** | No. | **2:24-cv-03750-MCS-PVC** |
|---|---|---|---|

I hereby certify that on <u>October 8, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' SUPPLEMENTAL BRIEFING PER COURT REQUEST (ECF 26)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 8, 2024</u>, at Los Angeles, California.

|  |  |
|---|---|
| M. Garcia-Luna | _[signature]_ |
| Declarant | Signature |

SA2024900189
67145095.docx