ERIC W. LEE (SBN 327002)
ROBERT PATRICK STICHT (SBN 138586)
JUDICIAL WATCH, INC.
425 Third Street, SW, Suite 800
Washington, D.C. 20024
Email: elee@judicialwatch.org
Telephone: (202) 646-5172
Fax: (202) 646-5199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC., et al.,<br><br>             Plaintiffs,<br>v.<br>SHIRLEY N. WEBER, et al.,<br><br>             Defendants. | Case No.  2:24-cv-3750<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS PER ORDER (ECF 16)**<br><br>Date: September 16, 2024<br>Time: 9:00 A.M.<br>Judge: Hon. Mark C. Scarsi<br>Action Filed: May 6, 2024 |

# **TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES ........................................................................................i

I.    DEFENDANTS WAIVED THE ZONE-OF-INTERESTS ARGUMENT REGARDING PLAINTIFF JUDICIAL WATCH AND DID NOT ADDRESS ITS INFORMATIONAL INJURY ........................... 1

II.    PLAINTIFF LPCA'S INTERESTS AS A POLITICAL PARTY CLEARLY FALL WITHIN THE ZONE OF INTERESTS PROTECTED BY SECTION 8(i) OF THE NVRA ................................................ 3

    A.  Standards Governing the Zone-of-Interests Inquiry ......................................... 3

    B.  As a Political Party, Plaintiff LPCA Is Squarely Within the Zone of Interests of Both the List Maintenance and Public Records Provisions of the NVRA ....................................................... 6

CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                           **Page No.**

*Ariz. All. for Retired Ams. v. Mayes*,
 No. 22-16490, 2024 U.S. App. LEXIS 23963 (9th Cir. Sept. 20, 2024) ...................... 2

*Association of Community Orgs. for Reform Now (ACORN) v. Fowler*,
 178 F.3d 350 (5th Cir. 1999) .................................................................................. 5, 6

*Assoc. of Data Processing Serv. Orgs., Inc. v. Camp*,
 397 U.S. 150 (1970) ............................................................................................... 4, 8

*Bank of Am. Corp. v. City of Miami*,
 581 U.S. 189 (2017) ..................................................................................................... 4

*Bank One Chi., N.A. v. Midwest Bank & Trust Co.*,
 516 U.S. 264 (1996) ..................................................................................................... 6

*Bennett v. Spear*,
 520 U.S. 154 (1997) ............................................................................................. 5, 10

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*,
 889 F.3d 584 (9th Cir. 2018) ....................................................................................... 9

*Campaign Legal Center v. Scott*,
 49 F.4th 931 (5th Cir. 2022) ....................................................................................... 2

*Citizens for Responsibility & Ethics in Wash. v. FEC*,
 No. 22-cv-3281, 2023 U.S. Dist. LEXIS 167635 (D.D.C. Sep. 20, 2023) ............... 2, 3

*FDA v. All. for Hippocratic Med.*,
 602 U.S. 367 (2024) ..................................................................................................... 2

*FEC v. Akins*,
 524 U.S. 11 (1998) .................................................................................................. 4, 5

*Garrett Dev., LLC v. Deer Creek Water Corp.*,
 No. 21-6105, 2022 U.S. App. LEXIS 29346 (10th Cir. Oct. 21, 2022) ....................... 1

*Havasupai Tribe v. Provencio*,
 906 F.3d 1155 (9th Cir. 2018) ................................................................................... 10

*Judicial Watch, Inc. v. Lamone*,
 399 F. Supp. 3d 425 (D. Md. 2019) ............................................................................. 3

*Judicial Watch, Inc. v. Logan*,
 No. 2:17-cv-8948 (C.D. Cal. 2017) ........................................................................... 10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 572 U.S. 118 (2014) ........................................................................................... 1, 3, 4

*Lubin v. Panish*,
 415 U.S. 709 (1974) ........................................................................................... 6, 7

*Milner v. Department of Navy*,
 562 U.S. 562 (2011) .............................................................................................. 6

*Nw. Requirements Utils. v. Fed. Energy Regul. Comm'n*,
 798 F.3d 796 (9th Cir. 2015) ................................................................................ 9

*Ozonoff v. Berzak*,
 744 F.2d 224 (1st Cir. 1984) ................................................................................ 4

*Project Vote / Voting for Am., Inc. v. Long*,
 682 F.3d 331 (4th Cir. 2012) ............................................................................ 8, 9

*Pub. Int. Legal Found. v. Boockvar*,
 370 F. Supp. 3d 449 (M.D. Pa. 2019) ........................................................... 1, 2, 9

*Thompson v. N. Am. Stainless, LP*,
 562 U.S. 170 (2011) ..................................................................................... 4, 5, 8

*Utah v. Evans*,
 536 U.S. 452 (2002) ........................................................................................... 10

*Vegan Outreach, Inc. v. Chapa*,
 454 Fed. Appx. 598 (9th Cir. 2011) ................................................................... 10

**Federal Statutes**

52 U.S.C. § 20501 ...................................................................................................2, 7

52 U.S.C. § 20504 ...................................................................................................... 7

52 U.S.C. § 20506 ...................................................................................................... 7

52 U.S.C. § 20507 ................................................................................................... 1, 7

52 U.S.C. § 20510 .............................................................................................. 1, 5, 8

Plaintiffs Judicial Watch, Inc. ("Judicial Watch") and the Libertarian Party of California ("LPCA") submit this supplemental memorandum of law in further opposition to the motion to dismiss filed by Defendants (Doc. 16), as directed by the Court, addressing "whether Plaintiffs have pleaded facts raising a plausible inference that they are persons aggrieved by a violation of the Act within the meaning of 52 U.S.C. § 20510(b), particularly as the issue pertains to the second claim for relief under § 8(i), 52 U.S.C. § 20507(i)." Doc. 26.

## I. DEFENDANTS WAIVED THE ZONE-OF-INTERESTS ARGUMENT REGARDING PLAINTIFF JUDICIAL WATCH AND DID NOT ADDRESS ITS INFORMATIONAL INJURY.

Defendants state that their supplemental brief "takes no position on whether Judicial Watch falls within the NVRA's zone of interests." Doc. 28 at 5. It is well-settled that, "[b]ecause the zone-of-interests inquiry is not jurisdictional, it can be waived." *Garrett Dev., LLC v. Deer Creek Water Corp.*, No. 21-6105, 2022 U.S. App. LEXIS 29346, at *34 (10th Cir. Oct. 21, 2022) (citation omitted); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). By taking no position, Defendants have waived any argument that Judicial Watch does not fall within the zone of interests of either the NVRA's list maintenance provisions (Section 8(a)(4) and related sections) or its public records provision (Section 8(i)).

Defendants' waiver may have been made in deference to *Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449 (M.D. Pa. 2019). In that case, a non-profit foundation "dedicated to 'promot[ing] the integrity of elections nationwide'" sought, and was denied, records pursuant to Section 8(i) concerning ineligible registrants. *Id.* at 452. The court squarely held that the foundation was a person "aggrieved by a violation" of the NVRA (*see* 52 U.S.C. § 20510(b)) because its interest fell within the zone of interests protected by Section 8(i). *Id.* at 456. The court particularly noted that the foundation's mission was consistent with two of the NVRA's stated purposes, *viz.*, "protect[ing] the integrity of the electoral process," and "ensur[ing] that accurate and current voter registration rolls are

1    maintained." *Id.*, citing 52 U.S.C. § 20501(b)(3)-(4).

2    Defendants maintain that they took no position on whether Judicial Watch's interest was within the NVRA's zone of interests because their previous briefs showed that it lacked Article III standing. Doc. 28 at 5, 11. Plaintiffs respectfully refer the Court to their previous discussion of those arguments. *See* Doc. 17 parts I.B & C. But Defendants also cite the newly decided *Ariz. All. for Retired Ams. v. Mayes*, No. 22-16490, 2024 U.S. App. LEXIS 23963 (9th Cir. Sept. 20, 2024), *petition for rehearing en banc filed* (9th Cir. Oct. 4, 2024), to further argue that Judicial Watch cannot claim standing based on a diversion of resources. Doc. 28 at 11-12. The claims in *Mayes*, however, are distinguishable because they were extraordinarily speculative. The plaintiffs' "conjecture-laden theory" there "speculate[d] that they might in the future need to divert resources because" a state list maintenance policy "could cause voters' current registrations" to be improperly cancelled. 2024 U.S. App. LEXIS 23963, at *25-26. "At its core, the plaintiffs' argument is that the county recorder—whose main job is to maintain accurate voting registration—will negligently remove the new voting registration and decide to keep the old one." *Id.* at *28. This "fanciful" causal chain was "'simply too speculative' to satisfy Article III." *Id.* at *28-*29 (citing *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393 (2024)).

It is important to note, moreover, that *Mayes* did *not* concern or even discuss how to plead a Section 8(i) informational injury sufficient for Article III standing. (Defendants have never addressed this issue.) In fact, establishing such an injury "is 'not … burdensome.'" *Campaign Legal Center v. Scott*, 49 F.4th 931, 940 (5th Cir. 2022) (Ho, J., concurring in the judgment) (citation omitted). Judge Ho maintained that such an injury would exist where withheld information "is necessary to engage in public advocacy about a pressing matter of policy" or "is essential to furthering Plaintiffs' mission to protect" voting rights. *Id.*; *see Citizens for Responsibility & Ethics in Wash. v. FEC*, No. 22-cv-3281, 2023 U.S. Dist. LEXIS 167635, at *15-18 (D.D.C. Sept. 20, 2023) (standing alleged where failing to disclose reports required by the Federal Election Campaign Act "hindered" the "programmatic activities" of a nonprofit watchdog that "empower[ed] voters and

2

expos[ed] corruption" by monitoring campaign finance records).

The complaint here sets forth how Judicial Watch's organizational mission has been impaired because Defendants failed to keep and provide requested records. Its mission is "to promote transparency, integrity, and accountability in government and fidelity to the rule of law," which it fulfills in part "through public records requests." Doc. 1 ¶ 77. Using public records laws, Judicial Watch "monitor[s] state and local election officials' compliance with their NVRA list maintenance obligations" and publishes its findings. *Id*. ¶ 83; *see Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 445 (D. Md. 2019) (because "[o]rganizations such as Judicial Watch" have "resources and [NVRA] expertise that few individuals can marshal," restricting their access to requested documents "undermines Section 8(i)'s efficacy"). In this case, the requested information included Confirmation Notices and responses to them. Doc. 1 ¶¶ 32, 36. The complaint makes clear that these notices are particularly critical to states' list maintenance programs and to Judicial Watch's efforts to assess those programs. *Id.* ¶¶ 9-10, 22, 50, 56, 68, 69.

Defendants have waived any argument that Judicial Watch's Section 8(i) claim lies outside the NVRA's zone of interest, and have not disputed that Judicial Watch has stated an informational injury. Accordingly, Judicial Watch has pleaded zone-of-interests and Article III standing to sue under Section 8(i).

## II. PLAINTIFF LPCA'S INTERESTS AS A POLITICAL PARTY CLEARLY FALL WITHIN THE ZONE OF INTERESTS PROTECTED BY SECTION 8(i) OF THE NVRA.

### A. Standards Governing the Zone-of-Interests Inquiry.

Courts "presume that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark*, 572 U.S. at 129 (citation omitted). In order to resolve this inquiry, courts must "determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127 (citations omitted). Of course, this depends entirely on the statute being interpreted. Thus, in *Lexmark*, the Supreme Court

relied on a detailed statement of the Lanham Act's purpose to hold that "to come within the zone of interests in a suit [for damages] for false advertising" under the Act, "a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131-132.

Other statutes have been held to encompass more expansive zones of interest. In particular, statutes that use formulations that refer generally to "person(s)" who are "aggrieved" by a statutory violation have been held to have wide zones of interest. As the Supreme Court observed, "[h]istory associates the word 'aggrieved' with a congressional intent to cast the standing net broadly—beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested.'" *FEC v. Akins*, 524 U.S. 11, 19 (1998) (citations omitted); *see, e.g., id.* at 15-16, 20 (suit by voters to compel disclosures by political committee was within zone of interest of Federal Election Campaign Act); *Assoc. of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153-54 (1970) (Administrative Procedures Act's grant of "standing to a person 'aggrieved by agency action within the meaning of a relevant statute,'" covers all interests—"'aesthetic, conservational, and recreational' as well as economic"—"arguably within the zone of interests to be protected") (citations omitted); *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 197 (2017) ("This Court has repeatedly written that the [Fair Housing Act's] definition of person 'aggrieved' reflects a congressional intent to confer standing broadly."); *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 175, 177-178 (2011) (Title VII's reference to persons "claiming to be aggrieved" by an unlawful employment practice enables "suit by any plaintiff with an interest 'arguably [sought] to be protected by the statute'") (citations omitted); *see also Ozonoff v. Berzak*, 744 F.2d 224, 228 (1st Cir. 1984) (Breyer, J.) ("Prudential requirements are typically excused only in unusual circumstances, such as where Congress has enacted a special 'person aggrieved' statute, allowing a plaintiff to act as a 'private attorney general.'") (citation omitted).

The NVRA provides a private right of action to "[a] person who is aggrieved by a violation of this chapter," with no other restriction beyond the requirement to send a notice letter. 52 U.S.C. § 20510(b)(1). The NVRA is thus one of those statutes that encompasses

a broad zone of interests—as the Fifth Circuit squarely held in *Association of Community Orgs. for Reform Now (ACORN) v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999) (citing *Akins*). Aside from the language of the statute and its legislative history, the court found support for this conclusion in the fact that the NVRA authorizes an award of attorney's fees, which provision is "designed to encourage enforcement by so-called private attorneys general." *Id.* at 364 (citing *Bennett v. Spear*, 520 U.S. 154, 165 (1997) (cleaned up)); *see* 52 U.S.C. § 20510(c).

Defendants attack the holding in *ACORN*, but only at the margins. Doc. 28 at 11. They point out that, while the *ACORN* court suggested that Congress "intended to extend standing under the [NVRA] to the maximum allowable under the Constitution" (178 F.3d at 363), the Supreme Court subsequently concluded "that the term 'aggrieved' must be construed more narrowly than the outer boundaries of Article III." *Thompson*, 562 U.S. at 177. But this conclusion does not contravene the observation in *Akins* that Congress' use of the term "aggrieved" persons implies a broad zone of interests, nor does it overrule the extensive precedent treating the term broadly. Indeed, *Thompson* itself applied the term broadly in the case before it to allow "suit by any plaintiff with an interest 'arguably [sought] to be protected by'" Title VII. *Id.* at 178 (citation omitted). Accordingly, *Thompson* does not contravene or overrule the conclusion in *ACORN* that the NVRA's language suggests a broad zone of interests. *Thompson* noted, moreover, that the Supreme Court's own prior decisions had "suggested in dictum that the Title VII aggrievement requirement conferred a right to sue on all who satisfied Article III standing," and that "[l]ater opinions, we must acknowledge, reiterate that the term 'aggrieved' in Title VIII reaches as far as Article III permits." *Id.* at 176 (citation omitted). While it ultimately rejected those formulations as going too far, the Supreme Court did not reject those prior decisions. Instead, it noted that "the holdings of those cases are compatible with the 'zone of interests' limitation" adopted in *Thompson*. *Id.* The same is true of the holding in *ACORN*.

Defendants' other argument is that "*ACORN* relied on a now-disfavored interpretive

5

method" because it cited legislative history. Doc. 28 at 11; *see ACORN*, 178 F.3d at 364 (citing comments of Sen. Ford about whether organizations can sue). This is no reason to reject the decision in *ACORN*. As a general matter, the propriety of using legislative history to ascertain the meaning of statutory texts, and the appropriate methods for doing so, are contested legal issues that have not been fully settled. Compare *Bank One Chi., N.A. v. Midwest Bank & Trust Co.*, 516 U.S. 264, 280 (1996) (Scalia, J., concurring) ("Legislative history that does not represent the intent of the whole Congress is nonprobative; and legislative history that does represent the intent of the whole Congress is fanciful."); with *Milner v. Department of Navy*, 562 U.S. 562, 572 (2011) ("Those of us who make use of legislative history believe that clear evidence of congressional intent may illuminate ambiguous text," although "ambiguous legislative history" must not be allowed "to muddy clear statutory language"). In any case, the particular matter for which legislative history was cited in *ACORN* concerned whether organizations as well as individuals can sue. *ACORN*, 178 F.3d at 364. That issue has not been raised here.

*ACORN* reached the correct conclusions about the broad reach of the phrase "aggrieved" as applied to "person," and about the significance of the NVRA's provision allowing for an award of attorney's fees.

**B.     As a Political Party, Plaintiff LPCA Is Squarely Within the Zone of Interests of Both the List Maintenance and Public Records Provisions of the NVRA.**

It has long been recognized that parties occupy a unique place in the American political system, because voters usually exercise their First and Fourteenth Amendment voting rights by voting for a party candidate. *See Lubin v. Panish*, 415 U.S. 709, 716 (1974) (if a law "unfairly or unnecessarily burden[s] either a minority party[] or an individual candidate[] … [t]he interests involved are not merely those of parties or individual candidates; the voters can assert their preferences only through candidates or parties or both").

Plaintiff LPCA is a political party pursuing electoral success in California. Like all

political parties, its main activities involve reaching out to voters. As explained in the complaint, "LPCA relies on California's voter rolls to identify in-state voters and to contact them and encourage them to assist the candidates it supports by learning about the party and its beliefs, volunteering, organizing, contributing, and voting." Doc. 1 ¶ 90. But contacting voters "is made more difficult because California's voter rolls contain many outdated and ineligible registrations," which causes LPCA "to waste significant time, effort, and money trying to contact voters … who no longer live at the registered address." *Id*. ¶¶ 91-92.

The NVRA is an election-related statute. Its stated purposes are:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;
> (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;
> (3) to protect the integrity of the electoral process; and
> (4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b). The NVRA's individual sections plainly relate to these purposes. For example, provisions requiring states to register voters who apply for a driver's license (*id*. § 20504) or public assistance (*id*. § 20506) concern the first two purposes. The provisions of Section 8 (*id*. § 20507) concern the third and fourth purposes.

Every political party ultimately relies on the voter rolls for voter contact, either directly or as the basis for further (costly) data processing. Thus, when states do not "protect the integrity of the electoral process," and when, as a result, "accurate and current voter registration rolls" are *not* maintained, political parties are injured. Those like LPCA who directly rely on voter rolls waste the time and efforts of volunteers, and they waste postage on bad mailings. This waste constitutes a real economic loss. *See* Doc. 1 ¶ 92 (LPCA "waste[s] significant time, effort, and money trying to contact voters listed on the rolls who no longer live at the registered address."). But the effect of this loss, and an equally valid way to describe the injury, as the complaint does, is that "LPCA's ability to contact California voters is made more difficult." Doc. 1 ¶ 91.

Where a state's failure to maintain its voter rolls inflicts avoidable costs on political

7

parties and thereby impairs their ability to contact voters, the resulting injury is plainly within the zone of interests of the list maintenance provisions of Section 8 of the NVRA. This was evident to Cong. Al Swift, the House sponsor of the NVRA.[1] Discussing a predecessor bill, the National Voter Registration Act of 1989, he commented that it "provides for the maintenance of accurate and up-to-date registration lists. Inaccurate registration lists are the bane of every election official, can lead to fraud *and are extremely costly to the states, political parties, candidates and others who depend upon them for effective voter contact.*" 136 Cong. Rec. 1243 (Feb. 6, 1990). Minimizing political parties' cost of voter contact was, accordingly, intended by the NVRA's sponsor. Regardless of the weight this Court chooses to give to this comment as legislative history, Cong. Swift spoke as an experienced candidate, and his observation simply makes sense for the reasons given above. Indeed, political parties are probably the primary private users of voter lists. Congress, whose members all belong to political parties, knows this. In any event, given the relevant language of 52 U.S.C. § 20510(b)(1) regarding a "person who is aggrieved by a violation of this chapter," LPCA need only show that the interest it describes, *viz.*, the ability to contact voters without the additional costs imposed by the state's neglect of its NVRA obligations, is "*arguably* within the zone of interests to be protected" by the NVRA. *See Camp*, 397 U.S. at 153 (emphasis added); *Thompson*, 562 U.S. at 178.

LPCA's interests in obtaining the public records it (and Judicial Watch) identified in their notice letter are also within the zone of interests of Section 8(i), which serves the same purpose as the list maintenance provisions. Section 8(i) "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote / Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012). Under the statute, "State officials labor under a duty of accountability to the public in ensuring that voter lists include eligible voters and exclude ineligible ones in the most accurate manner possible. Without such transparency, public confidence in the

---

[1] See https://www.congress.gov/bill/103rd-congress/house-bill/2.

essential workings of democracy will suffer." *Id.* at 339; *see also Boockvar*, 370 F. Supp. 3d at 456 (in lawsuit under Section 8(i), party seeking to ensure that "the voter rolls are free from all manner of ineligible registrants" was within the zone of interests protected by the NVRA).

Defendants transparently attempt to redefine and truncate LPCA's interests so as to place them outside the NVRA's zone of interests. Thus, they describe "LPCA's interest in winning elections," "LPCA's interest in saving money," and "LPCA's election-winning and cost-cutting interests." Doc. 28 at 8-9. What these descriptions assiduously fail to do is connect these concepts to LPCA's *ability to contact voters*. Compare Doc. 1 ¶¶ 90-92; Doc. 17 at 13 (the "well-known path" to political success "involves contacting voters, convincing them to go the polls and vote for party candidates, and persuading supporters to contribute money and volunteer time for this work"). Defendants' unlawful neglect of their voter rolls has impaired LPCA's ability to contact voters. LPCA's interest in doing so is well within the NVRA's zone of interests.

Defendants argue that LPCA's "economic interests differ from other statutory interests." Doc. 28 at 9. Once again, Defendants fail to connect LPCA's economic losses with a diminished ability to contact voters, which is the point. In any case the economic interests in the cases they cite are readily distinguishable. *Nw. Requirements Utils. v. Fed. Energy Regul. Comm'n*, 798 F.3d 796, 809 (9th Cir. 2015) (interests of "wholesale energy customers" in lowering their own energy costs "do not align" with "the purposes of a statutory provision intended to increase access to transmission markets") (citation omitted); *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 606 (9th Cir. 2018) ("likely economic impact of [a] proposed casino on other competing casinos, including that of plaintiff" fell outside zone of interests of National Environmental Policy Act); *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1166 (9th Cir. 2018) ("the Mining Act's obvious intent was 'to reward and encourage the discovery of minerals that are valuable in an economic sense,'" while the plaintiffs' "interests are environmental and historical, but not economic") (citation omitted).

Finally, Defendants revisit the argument that that LPCA's injuries are not redressable under Article III because the NVRA incorporates a waiting period. Doc. 28 at 9-10. As Plaintiffs previously responded (Doc. 17 at 15), "even an attenuated causal chain of events initiated by a favorable ruling suffices for redressability purposes, so long as the chain is likely to end in relieving the plaintiff's harm." *Vegan Outreach, Inc. v. Chapa*, 454 Fed. Appx. 598, 601 (9th Cir. 2011) (citation omitted); *see Utah v. Evans*, 536 U.S. 452, 464 (2002) (standing may be premised on a "change in a legal status" with a "practical consequence" of "a significant increase in the likelihood" of "relief that directly redresses the injury"); *Bennett*, 520 U.S. at 171 (burden of pleading redressability "is relatively modest at this stage of the litigation"). Even an order starting the process of NVRA compliance and resulting in removals years from now qualifies under this standard.[2]

## CONCLUSION

Defendants' motion to dismiss should be denied.

Dated:    October 22, 2024             Respectfully submitted,

                                   By:    */s/ Eric W. Lee*
                                          Eric W. Lee
                                          Robert D. Popper*
                                          Robert Patrick Sticht
                                          ROBERT PATRICK STICHT

                                          Attorneys for Plaintiffs

                                          **Admitted pro hac vice*

---

[2] Indeed, Judicial Watch has bargained for and endured such waits before. *See* Exhibit A, Settlement Agreement, *Judicial Watch, Inc. v. Logan*, No. 2:17-cv-8948 (C.D. Cal. 2017), ECF 96-1.

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this brief contains 3,495 words, which complies with the word limit set by Doc. 26.

Dated: October 22, 2024           Respectfully submitted,

                                  By:   */s/ Eric W. Lee*
                                        Eric W. Lee