UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDICIAL WATCH, INC., and THE LIBERTARIAN PARTY OF CALIFORNIA,<br><br>Plaintiffs,<br><br>v.<br><br>SHIRLEY N. WEBER, in her official capacity as California Secretary of State, and the STATE OF CALIFORNIA,<br><br>Defendants. | Case No. 2:24-cv-03750-MCS-PVC<br><br>**ORDER RE: MOTION TO DISMISS (ECF NO. 16)** |

Defendants Shirley N. Weber and the State of California move to dismiss the complaint of Plaintiffs Judicial Watch, Inc., and the Libertarian Party of California. (Mot., ECF No. 16.) Plaintiffs filed a brief opposing the motion, (Opp'n, ECF No. 17), and Defendants filed a reply, (Reply, ECF No. 19). The Court heard oral argument on September 16, 2024, (Mins., ECF No. 24), after which it ordered supplemental briefing on the question of statutory or prudential standing, (Order Req. Suppl. Br., ECF No. 26.) The parties filed supplemental briefs. (Defs.' Suppl. Br., ECF No. 28; Pls.' Suppl. Br., ECF No. 31.) The Court has considered the supplemental briefs but disregards the

1

parties' new, unauthorized arguments on constitutional standing offered therein. Defendants submitted a notice of supplemental authority, (Defs.' Notice of Suppl. Auth., ECF No. 32), to which Plaintiffs responded, (Pls.' Resp. to Defs.' Notice of Suppl. Auth., ECF No. 33). The Court has considered the authority without reference to the unauthorized legal arguments in Defendants' notice and Plaintiffs' response pertaining thereto.

I.  BACKGROUND

This is an action for declaratory and injunctive relief under the National Voter Registration Act of 1993 ("NVRA"). (Compl. ¶ 1, ECF No. 1.) Plaintiff Judicial Watch is a nonprofit educational organization, and Plaintiff Libertarian Party of California is a political party; Defendants are the State of California and its Secretary of State, Shirley N. Weber. (Compl. ¶¶ 4–7.) The NVRA requires states to conduct a general program that makes a reasonable effort to remove from voter rolls the names of voters who have become ineligible due to death or change in residence. 52 U.S.C. § 20507(a)(4). Plaintiffs assert that California's program does not comport with the NVRA given how few registrations have been removed thereunder, and that Defendants refused to produce public records they requested. (*See generally* Compl. ¶¶ 19–93.) Plaintiffs bring two counts of violation of the NVRA: (1) violation of § 8(a)(4), 52 U.S.C. § 20507(a)(4), which requires California to conduct a general program to remove ineligible voters, and (2) violation of § 8(i), 52 U.S.C. § 20507(i), which requires California to make available all records concerning the implementation of such a program. (Compl. ¶¶ 94–103.)

II.  LEGAL STANDARD

Only the Federal Rule of Civil Procedure 12(b)(1) standard needs to be recited here. Rule 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. "Because standing and ripeness pertain to federal courts' subject

matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Id.*

Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint,[1] the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply with equal force to Article III standing when it is being challenged on the face of the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*). Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### III. DISCUSSION

The Court only reaches Defendants' arguments challenging Plaintiffs' constitutional standing to bring suit, which are dispositive. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To support Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

---

[1] The Court agrees with Plaintiffs that Defendants' jurisdictional challenges are better treated as facial attacks. (Opp'n 8.) Thus, the Court has not considered the parties' supporting declarations in deciding the motion.

redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Individual and organizational plaintiffs are subject to the same elements. *La Asociacion De Trabajadores De Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). "[U]nder Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

Defendants argue that Plaintiffs lack constitutional standing to pursue their NVRA claims. (Mot. 6–12.) Judicial Watch and the Libertarian Party both assert organizational standing, and Judicial Watch asserts associational standing on behalf of its members. (Compl. ¶¶ 77–93.) Plaintiffs' counsel conceded at the hearing that Plaintiffs did not brief and do not assert different theories of standing as between the § 8(a)(4) and § 8(i) claims. (Tr. 23–24, 31, ECF No. 29.) For the purpose of this Order only, the Court treats this as a concession that the same standing inquiry applies to both claims.[2]

---

[2] At the hearing, Plaintiffs raised a theory of informational injury to support the § 8(i) claim but acknowledged they did not brief it. (Tr. 31; *cf.* Compl. ¶ 93 (alleging "Plaintiffs were denied access to a category of public records" to which they were entitled).) Plaintiffs then used their supplemental brief on statutory standing to reassert this new theory of constitutional standing. (Pls.' Suppl. Br. 2–3.) That briefing was unauthorized, and Plaintiffs did not timely raise the theory in a manner that satisfies principles of party presentation. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." (internal quotation marks omitted)). Accordingly, the Court disregards it for the purpose of this Order.
That said, a sister district court persuasively made disparate standing inquiries into claims under § 8(a)(4) and § 8(i) in another of Judicial Watch's cases, ultimately concluding that the plaintiffs had pleaded enough facts to support constitutional standing to pursue a § 8(i) claim, as they had sufficiently alleged an informational injury. *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 U.S. Dist. LEXIS 203147, at *12–26 (N.D. Ill. Oct. 28, 2024). That decision issued after briefing and hearing of the parties' constitutional standing arguments. Given the lack of timely argument on an informational injury theory here, counsel's suggestion that the § 8(i) claim may be informally resolved, (*see* Tr. 25), and the ultimate disposition of the motion, the Court does not adopt the reasoning of that court at this time. Although the

### A. Organizational Standing

The Libertarian Party asserts it suffered an Article III injury in the form of wasted time and resources contacting voters who are no longer located at addresses obtained from California's voter rolls. (Compl. ¶¶ 90–92.) Judicial Watch contends it has expended resources toward investigating and researching California's failure to comply with the NVRA that it otherwise would have used toward its regular activities or would not have expended. (*Id.* ¶¶ 83–87.)

In *FDA v. Alliance for Hippocratic Medicine*, the Supreme Court clarified that an organization does not have standing to sue simply because it diverts resources in response to a defendant's actions. *See* 602 U.S. 367, 395 (2024). In that case, the Supreme Court determined that organizations that pleaded the defendant had "impaired their ability to provide services and achieve their organizational missions" did not demonstrate standing, as "[a]n organization cannot manufacture its own standing" "simply by expending money to gather information and advocate against the defendant's action." *Id.* at 394–95 (internal quotation marks omitted). That said, an organization may have standing if the defendant's "actions directly affect[] and interfere[] with [the plaintiff's] core business activities." *Id.* at 395 (construing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)); *see Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1170 (9th Cir. 2024) ("*Hippocratic Medicine* clarified that the distinctive theory of organizational standing reflected in *Havens Realty* extends *only* to

---

decision might provide a basis for a different result or a motion for reconsideration, *but see White v. Moore*, No. 2:21-cv-06964-MCS-MAA, 2022 U.S. Dist. LEXIS 24541, at *3 (C.D. Cal. Feb. 4, 2022) (Scarsi, J.) (rejecting notion that a nonprecedential decision presents a ground for reconsideration under C.D. Cal. R. 7-18), the Court encourages the parties to avoid further motion practice over the original complaint, confer about the Illinois district court's reasoning and, if necessary, litigate any further disputes over constitutional standing in a motion attacking the anticipated amended complaint, *see* Fed. R. Civ. P. 1 (requiring procedural rules to be used "to secure the just, speedy, and inexpensive determination of every action and proceeding").

cases in which an organization can show that a challenged governmental action directly injures the organization's pre-existing core activities and does so *apart* from the plaintiffs' response to that governmental action.").

Plaintiffs have not pleaded facts raising a plausible inference that the Secretary's alleged failure to maintain a program compliant with § 8(a)(4) impacted their preexisting core business activities, i.e., promoting certain political beliefs and election candidates for the Libertarian Party on the one hand and promoting government transparency for Judicial Watch on the other. (Compl. ¶¶ 77, 88–89.) To be sure, the Libertarian Party's case for a constitutional injury presents a closer question given the nexus between voter outreach and a political party's core functions. But it merely alleges Defendants' dereliction of their NVRA obligations makes outreach "more difficult" and causes it "to waste significant time, effort, and money." (Compl ¶¶ 91–92.) That is just "a diversion-of-resources theory by another name." *Mayes*, 117 F.4th at 1180; *see id.* (rejecting theory of "a direct organizational harm" in the form of impaired "ability to engage in . . . core voter registration activities" (internal quotation marks omitted)); *Havens Realty*, 455 U.S. at 379 (noting constitutional injury requires something "more than simply a setback to the organization's abstract social interests").

Plaintiffs' theory of organizational standing is inadequately pleaded.

### B. Associational Standing

Judicial Watch asserts Defendants' failure to comply with the NVRA affects its individual members who are registered to vote in California and who are concerned about voter fraud, election integrity, and vote dilution. (Compl ¶¶ 77–82.)

An association can sue on behalf of its members if it demonstrates: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The

first element demands "specific allegations establishing that at least one *identified member* had suffered or would suffer harm.'" *Associated Gen. Contrs. of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (quoting and adding emphasis to *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). However, an organization need not identify an injured member at the pleading stage "[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015), *overruled on other grounds by Mayes*, 117 F.4th at 1178.

Judicial Watch does not identify any member affected by Defendants' purported NVRA violations, and the Court declines to determine that Defendants' actions clearly will adversely affect its members in a concrete manner. Judicial Watch's abstract, nigh-philosophical description of the concerns of its members fails to raise an inference that any member has suffered a particularized, personal injury as opposed to having a "generalized grievance" regarding the sanctity of the electoral process. *Iten v. County of Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023) (internal quotation marks omitted); *see RNC v. Aguilar*, No. 2:24-cv-00518-CDS-MDC, 2024 U.S. Dist. LEXIS 189613, at *13 (D. Nev. Oct. 18, 2024) ("[P]articipation in the democratic process in elections that comply with statutes is a general right applicable to *all* voters. Voters who have no greater stake in a lawsuit than any other citizen cannot establish a particularized injury.").

Judicial Watch has not pleaded enough factual content to support its associational standing.

### C. Disposition

Plaintiffs have not pleaded enough facts to support their constitutional standing to bring this action. Their claims must be dismissed.

Given the Ninth Circuit's guidance that leave to amend should be granted with "extreme liberality," the Court gives Plaintiffs leave to amend. *Bacon v. Woodward*, 104 F.4th 744, 753 (9th Cir. 2024) (internal quotation marks omitted). The defects identified above are issues of pleading that Plaintiffs might be able to cure by amendment. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *e.g.*, *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1116 n.5 (9th Cir. 2024) (Baker, J., concurring) ("If . . . an organizational plaintiff alleging associational standing must identify at least one injured member in its complaint, such a plaintiff should ordinarily be given an opportunity to cure any failure to do so . . . ."). Moreover, fairness and prudential concerns support granting leave, as there has been significant clarification of the requirements for organizational standing since Plaintiffs initiated this action—*Alliance for Hippocratic Medicine* and *Mayes* both postdate the complaint.

Given the dismissal for lack of constitutional standing, the Court declines to address the other issues Defendants raised in their motion. *See Moore v. Maricopa Cnty. Sheriff's Office*, 657 F.3d 890, 895 (9th Cir. 2011) ("[T]he Supreme Court has specifically instructed that a district court must first determine whether it has jurisdiction before it can decide whether a complaint states a claim.").[3]

---

[3] To focus the parties' attention in further proceedings, the Court offers the following observations about two issues the parties briefed: statutory standing and sovereign immunity. *See* Fed. R. Civ. P. 1.

The Court invited supplemental briefing "on whether Plaintiffs have pleaded facts raising a plausible inference that they are persons aggrieved by a violation of the Act within the meaning of 52 U.S.C. § 20510." (Order Req. Suppl. Br. 1.) The parties' supplemental briefs focused on whether Plaintiffs fall within the zone of interests protected by the NVRA. (*See* Defs.' Suppl. Br. 1–7; Pls.' Suppl. Br. 3–10.) Neither side squarely discussed whether the Libertarian Party, which never requested production of records from Defendants, is "[a] person who is aggrieved" by Defendants' purported failure to produce records Judicial Watch requested. 52 U.S.C. § 20510(b)(1). (*Compare* Compl. Ex. 1 (requesting records on behalf of Judicial Watch only), *with id.* Ex. 3 (providing notice of violation of § 8(i) on behalf of both Judicial Watch and the

## IV. CONCLUSION

For the reasons stated above, the Court grants the motion and dismisses the complaint with leave to amend. Plaintiffs may file an amended complaint within 14 days if they can do so consistent with Federal Rule of Civil Procedure 11(b) and this Order. Plaintiffs shall include as an appendix to the amended complaint "a 'redline' version of the amended pleading showing all additions and deletions of material." (Initial Standing Order § 10(a), ECF No. 10.) Failure to file a timely amended complaint will waive the right to do so. Leave to add new defendants or claims must be sought by a separate, properly noticed motion.

**IT IS SO ORDERED.**

Dated: February 11, 2025

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

---

Libertarian Party).) The parties had previously offered arguments about the Libertarian Party's "piggybacking" on a request for documents without employing the framework of statutory standing. (Mot. 17; Opp'n 19; Reply 9–10.)

At the hearing, Plaintiffs conceded that they were unaware of any authorities applying the plan-of-the-Convention doctrine to abrogate a state's sovereign immunity to suit under the NVRA after the Supreme Court clarified the doctrine in *Torres v. Texas Department of Public Safety*, 597 U.S. 580 (2022). (Tr. 30.) Since then, one district court has, though it did so without reference to *Torres*. *Ill. State Bd. of Elections*, 2024 U.S. Dist. LEXIS 203147, at *26–28.