UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDICIAL WATCH, INC., and THE LIBERTARIAN PARTY OF CALIFORNIA,<br><br>Plaintiffs,<br><br>v.<br><br>SHIRLEY N. WEBER, in her official capacity as California Secretary of State, and the STATE OF CALIFORNIA,<br><br>Defendants. | Case No. 2:24-cv-03750-MCS-PVC<br><br>**ORDER RE: MOTION TO DISMISS (ECF NO. 38)** |

Defendants Shirley N. Weber and the State of California move to dismiss the first amended complaint of Plaintiffs Judicial Watch, Inc., and the Libertarian Party of California ("LPCA"). (Mot., ECF No. 38.) Plaintiffs filed a brief opposing the motion, (Opp'n, ECF No. 39), and Defendants filed a reply, (Reply, ECF No. 40). The Court heard oral argument on June 30, 2025. (Mins., ECF No. 41.)

///

## I. BACKGROUND

As stated in the Court's order granting Defendants' prior motion to dismiss, (Order 2, ECF No. 34), this is an action for declaratory and injunctive relief under the National Voter Registration Act of 1993 ("NVRA"). (FAC ¶ 1, ECF No. 37.) Plaintiff Judicial Watch is a nonprofit educational organization, and Plaintiff LPCA is a political party; Defendants are the State of California and its Secretary of State, Shirley N. Weber. (*Id.* ¶¶ 4–7.) The NVRA requires states to conduct a general program that makes a reasonable effort to remove from voter rolls the names of voters who have become ineligible due to death or change in residence. 52 U.S.C. § 20507(a)(4). Plaintiffs assert that California's program does not comport with the NVRA given how few registrations have been removed thereunder, and that Defendants refused to produce public records Judicial Watch requested. (*See generally* FAC ¶¶ 19–126.) Plaintiffs bring two counts of violation of the NVRA. In Count I, both Plaintiffs claim a violation of § 8(a)(4), 52 U.S.C. § 20507(a)(4), which requires California to conduct a general program to remove ineligible voters. (*Id.* ¶¶ 127–32.) In Count II, Judicial Watch claims a violation of § 8(i), 52 U.S.C. § 20507(i), which requires California to make available all records concerning the implementation of such a program. (*Id.* ¶¶ 133–36.)

Following a dismissal of the original complaint for lack of pleaded allegations toward standing, (Order 5–7), Plaintiffs newly identify some of their individual California voter members, who are convinced that California's voter list maintenance practices are inadequate, undermining their confidence in the electoral process and discouraging their participation in elections, (FAC ¶¶ 83–85). Plaintiffs further allege that LPCA's core activities as a political party include engaging in voter outreach and other election-related activities. (*Id.* ¶ 89.) To contact voters, LPCA purchases the voter rolls California maintains. (*Id.* ¶¶ 89–94.) The voter rolls purportedly have more outdated and ineligible registrations than they would if California maintained the voter lists consistent with the NVRA. (*Id.* ¶ 95.) Thus, LPCA asserts that voter outreach efforts like mailings, door-to-door visits, and telephone calls are less fruitful than they

would be if California complied with the NVRA, increasing "the average monetary and volunteer costs associated with each successful voter contact made by LPCA." (*Id.* ¶ 118; *see id.* ¶¶ 96–124.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Rule 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Id.*

Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, as here, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply with equal force to Article III standing when it is being challenged on the face of the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*). Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to

3

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

### A. Constitutional Standing

Defendants contend that Judicial Watch and LPCA lack constitutional standing to bring their claims. (Mot. 3–9.)[1] "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To support Article III standing, "[t]he

---

[1] After the motion was filed, panels in the Third and Sixth Circuit Courts of Appeal issued published decisions addressing questions of constitutional standing to sue under NVRA § 8(i). *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*, 136 F.4th 456 (3d Cir. 2025); *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025). Because the issue is jurisdictional and the parties had an opportunity to address these new decisions in briefing and at oral argument, (*see* Opp'n 17; Reply 1–3), the Court considers arguments pertaining to the new decisions even though they were not presented in the moving brief, *see Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (obliging courts to examine subject-matter jurisdiction issues sua sponte).

plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Individual and organizational plaintiffs are subject to the same elements. *La Asociacion De Trabajadores De Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). "[U]nder Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

### 1. Judicial Watch's Standing

As to the § 8(i) claim, Judicial Watch fails to state a concrete, particularized harm it suffered from the purported failure to produce records. Judicial Watch alleges that being denied access to records it requested "hampered its mission to promote transparency, integrity, and accountability in government and fidelity to the rule of law." (FAC ¶ 126.) The Court finds persuasive the reasoning of the Third, Fifth, and Sixth Circuits, which explained that, given the Supreme Court's guidance in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), an NVRA § 8(i) plaintiff asserting an informational injury must demonstrate "downstream consequences," *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 937 (5th Cir. 2022), that have "a nexus to an interest Congress sought to protect in passing the NVRA," *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*, 136 F.4th 456, 466 (3d Cir. 2025); *see also Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 631–32 (6th Cir. 2025) (endorsing reasoning of *Scott* and *Sec'y Commonwealth of Pa.*). The Third and Sixth Circuit panels rejected a legal advocacy organization's theories of informational injury predicated on the frustration of its goals to promote election integrity and compliance with law, and to produce educational materials. *Benson*, 136 F.4th at 631–32; *Sec'y Commonwealth of Pa.*, 136 F.4th at 467–69. Judicial Watch's complaint suffers from the same defect recognized by these circuit courts—it identifies no concrete, particularized injury from its inability

to access the records it requested, resting instead on an amorphous setback to an organizational goal. That does not suffice.

The Court respectfully declines to follow *Judicial Watch, Inc. v. Illinois State Board of Elections*, No. 24 C 1867, 2024 U.S. Dist. LEXIS 203147, at *21–26 (N.D. Ill. Oct. 28, 2024), which did not consider the Fifth Circuit decision and did not have the benefit of the Third and Sixth Circuit's later decisions. The Court also rejects Judicial Watch's argument that following the Third and Sixth Circuits "would render Section 8(i) a practical nullity." (Opp'n 17.) First, § 8(i) still mandates that states make records available for public inspection. Federal law requires states to disclose records even if certain records requesters might be unable to bring a federal lawsuit to ensure compliance. As demonstrated by the parties' prelitigation communications regarding Judicial Watch's demand for records, (FAC Exs. 3–4), and the parties' representation at the hearing on Defendants' first motion to dismiss that this claim might be resolved informally, not every disclosure dispute needs to be subjected to litigation in federal court. Second, both panels left open the door for plaintiffs to assert standing by offering specific plans for their use of records subject to § 8(i) requests. *See Benson*, 136 F.4th at 632; *Sec'y Commonwealth of Pa.*, 136 F.4th at 468. Judicial Watch has made no effort to identify any such specific plans here.

For that reason, and because Judicial Watch was unable to cure defects in its standing allegations even after a dismissal for lack of standing, the Court denies further leave to amend the § 8(i) claim. *See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

As to the § 8(a)(4) claim, Judicial Watch's sole theory of associational standing remains inadequately pleaded. (*See* Opp'n 5 (acknowledging abandonment of organizational standing theory).) An association can sue on behalf of its members if it demonstrates: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and

(c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). In its decision resolving the last motion, the Court found Judicial Watch's allegations toward its associational standing theory insufficient because it had not "identif[ied] any member affected by Defendants' purported NVRA violations," and had not "raise[d] an inference that any member has suffered a particularized, personal injury as opposed to having a 'generalized grievance' regarding the sanctity of the electoral process." (Order 7 (quoting *Iten v. County of Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023)).)

Judicial Watch cured the first deficiency by identifying a specific constituent member, but not the second. The Judicial Watch member is a registered voter who is allegedly discouraged from participating in the electoral process given the state's voter list maintenance practices and who "now doubts whether there is any point in casting his ballot in California elections." (FAC ¶ 83.) The federal courts would be overrun if every individual who felt anxiety, grief, or uncertainty about the administration of federal elections had Article III standing. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) ("*AHM*") ("An Article III court is not a legislative assembly, a town square, or a faculty lounge. Article III does not contemplate a system where 330 million citizens can come to federal court whenever they believe that the government is acting contrary to the Constitution or other federal law."). Feeling discouraged is not a concrete, particularized injury that might provide Judicial Watch's member standing to sue in his own right. *See, e.g.*, *Mussi v. Fontes*, No. CV-24-01310-PHX-DWL, 2024 U.S. Dist. LEXIS 220142, at *23–30 (D. Ariz. Dec. 5, 2024) (acknowledging split in authority but ultimately rejecting diminished-confidence-in-elections theory of standing to bring an NVRA claim); *RNC v. Aguilar*, No. 2:24-cv-00518-CDS-MDC, 2024 U.S. Dist. LEXIS 189613, at *13 (D. Nev. Oct. 18, 2024) ("[P]articipation in the democratic process in elections that comply with statutes is a general right applicable to *all* voters.

Voters who have no greater stake in a lawsuit than any other citizen cannot establish a particularized injury.").

Accordingly, because Judicial Watch has not identified a constituent member with a concrete, particularized injury, it cannot maintain its suit under an associational standing theory. Because Judicial Watch was unable to cure a defect identified in a prior order and offers no additional facts it might plead to cure the defect on further amendment, the Court denies leave to amend.

For these reasons, the Court dismisses both of Judicial Watch's claims for lack of standing without leave to amend.

### 2. LPCA's Standing

LPCA has adequately pleaded its standing to pursue the § 8(a)(4) claim. LPCA asserts an organizational theory of standing. (Opp'n 6–10.)[2] "[O]rganizations may have standing 'to sue on their own behalf for injuries they have sustained.'" *AHM*, 602 U.S. at 393. In *AHM*, the Supreme Court clarified limitations of organizational standing, noting that "[a]n organization cannot manufacture its own standing" "simply by expending money to gather information and advocate against the defendant's action." *Id.* at 394–95 (internal quotation marks omitted). Instead, an organization may have standing if the defendant's "actions directly affect[] and interfere[] with [the plaintiff's] core business activities." *Id.* at 395 (construing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)); *see Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1170 (9th Cir. 2024) ("*Hippocratic Medicine* clarified that the distinctive theory of organizational standing reflected in *Havens Realty* extends *only* to cases in which an organization can show that a challenged governmental action directly injures the organization's pre-existing core activities and does so *apart* from the plaintiffs' response to that

---

[2] Because the organizational theory is appropriately pleaded, the Court does not decide whether LPCA has standing under its associational theory.

8

governmental action."), *vacated on grant of reh'g en banc*, 130 F.4th 1177 (9th Cir. 2025).³

The Court reasoned in its prior order that LPCA's "case for a constitutional injury presents a closer question given the nexus between voter outreach and a political party's core functions," but that the complaint as pleaded merely asserted "a diversion-of-resources theory by another name." (Order 6 (quoting *Mayes*, 117 F.4th at 1180).) Plaintiffs' amended complaint addresses the Court's concerns. First, Plaintiffs provide additional allegations that voter outreach is a core component of LPCA's activities. (*E.g.*, FAC ¶ 89.) Plaintiffs assert that "[a]cquiring California's official voter lists is necessary in order to contact California's voters" given the costs and weaknesses of other methods of obtaining voter information. (*Id.* ¶¶ 89–94.) California's purported failure to maintain its voter rolls impede LPCA's ongoing voter outreach efforts, decreasing their success and increasing their cost. (*Id.* ¶¶ 96–124.)

Key to the Court's disposition is the inference raised in the newly pleaded allegations that LPCA would undertake its voter outreach efforts using California's voter rolls irrespective of their compliance with the NVRA. (*See, e.g.*, FAC ¶¶ 89, 91, 101, 107, 112.) The divided panel decision in *Immigrant Defenders Law Center v. Noem*, __ F.4th __, No. 25-2581, 2025 U.S. App. LEXIS 17884 (9th Cir. July 18, 2025), is instructive. There, the panel majority held that an immigrant defense organization established organizational standing to challenge a federal immigration policy on the basis that the policy would require it to expend resources "to continue advancing its core business activities and longstanding mission of providing direct representation, counseling, and legal assistance to noncitizens in removal proceedings." 2025 U.S. App. LEXIS 17884, at *22; *see id.* at *19–25. The dissenter viewed these activities differently, casting "[t]he organization's post-[policy implementation] initiatives not

---

³ The parties agree the panel decision in *Mayes* remains an instructive interpretation of *AHM* even though it is no longer binding precedent. (Mot. 3 n.1; Opp'n 9 n.4.)

9

[as] mere extensions of its core business activities[ but as] new activities altogether," and criticizing the majority's "fram[ing] the organization's core business activities at too high a level of generality." *Id.* at *64, 66 (Nelson, J., dissenting). In other words, the dispositive question separating the majority and dissent on this issue was whether the activities impacted by the government policy would have been part of the organization's core business activities irrespective of the policy. Here, discovery might prove or disprove allegations raising the inference that LPCA's voter outreach efforts necessarily rely on California's voter rolls—for example, the facts might show that "[a]cquiring California's official voter lists is [*not*] necessary in order to contact California's voters." (FAC ¶ 91.) On this facial attack to subject-matter jurisdiction, however, the Court accepts the allegations as true and finds LPCA has pleaded enough to sustain its organizational theory of standing to pursue its § 8(a)(4) claim.

### B. Statutory Standing

Defendants argue LPCA lacks statutory standing to sue because it falls outside the NVRA's zone of interests. (Mot. 10–14.)

Defendants waived this argument by failing to present it in their prior motion. A party that makes a motion under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). In their motion to dismiss the original complaint, Plaintiffs offered no challenge pertaining to statutory standing. (*See generally* Prior Mot., ECF No. 16.) Instead, Defendants briefed statutory standing after the Court invited supplemental briefing on whether Plaintiffs are persons aggrieved by a violation of the NVRA within the meaning of 52 U.S.C. § 20510(b) in the context of the § 8(i) claim. (Order Requiring Suppl. Br., ECF No. 26; Defs.' Suppl. Br. 1–7, ECF No. 28.) The arguments Defendants raised in their supplemental brief and in the instant motion were available to them when they filed their motion to dismiss the original complaint.

They lost the opportunity to raise it in a pre-answer motion. *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017).

Regardless, the Court rejects the challenge on the merits. The NVRA provides a cause of action to "[a] person who is aggrieved by a violation." 52 U.S.C. § 20510(b)(1). In the context of other federal statutes conferring "aggrieved" persons a right to sue, the Supreme Court has interpreted similar language broadly. *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 197–99 (2017) (construing the Fair Housing Act); *FEC v. Akins*, 524 U.S. 11, 19–20 (1998) (construing the Fair Election Campaign Act). "History associates the word 'aggrieved' with a congressional intent to cast the standing net broadly—beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested." *Akins*, 524 U.S. at 19. The Supreme Court thus has held "that the definition of person aggrieved . . . showed a congressional intention to define standing as broadly as is permitted by Article III of the Constitution." *Bank of Am.*, 581 U.S. at 197 (internal quotation marks omitted); *but see Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 176–78 (2011) (applying a narrower scope "than the outer boundaries of Article III" to the meaning of "person aggrieved" as used in Title VII of the Civil Rights Act). Although the parties offer no Supreme Court precedent construing the term as used in the NVRA, the Fifth Circuit previously determined that Congress "intended to extend [statutory] standing under the [NVRA] to the maximum allowable under the Constitution." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999).

Defendants argue that, under the test prescribed in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), LPCA falls outside the zone of interests of the NVRA. (Mot. 11–14.) Relying on more recent Supreme Court precedent, the Court disagrees. Decided against the backdrop of *Lexmark*, the Supreme Court in *Bank of America* reviewed its cases construing "aggrieved person" as used in the Fair Housing Act to be commensurate with the demands of Article III standing. 581 U.S. at 196–98. The Supreme Court determined that a municipality's claims of "lost tax

revenue and extra municipal expenses" were, "at the least, *arguably* within the zone of interests that the [Fair Housing Act] protects" given allegations that banks' discriminatory practices "hindered the City's efforts to create integrated, stable neighborhoods," which "reduced property values, diminishing the City's property-tax revenue and increasing demand for municipal services." *Id.* at 197, 200 (internal quotation marks omitted). Here, similarly, the LPCA's asserted injury to the efficacy of its voter outreach activities is at least arguably within the interest of the LPCA "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(4). Accurate, current voter lists are important not only to the fair and efficient administration of elections, but also to any political party, candidate, or advocacy group engaging in communications with voters, the lifeblood of the democratic process.

LPCA's claim survives Defendants' statutory standing challenge.

### C. Sovereign Immunity

Finally, Defendants argue that the sovereign immunity of the State of California bars any NVRA suit against it. (Mot. 19–21.)

"[T]he Constitution does not provide for federal jurisdiction over suits against nonconsenting states." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). The Eleventh Amendment bars suits seeking either damages or injunctive relief "against a state, an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (per curiam) (quoting *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1422–23 (9th Cir. 1991)).

Plaintiffs contend the plan-of-the-Convention exception to sovereign immunity authorizes NVRA claims against California because the states surrendered their immunity through the Elections Clause of the United States Constitution. (Opp'n 15–16.) "States can . . . be sued if they have consented to suit in the plan of the Convention." *PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 501 (2021).

The test for application of this structural waiver of immunity is "whether the federal power at issue is 'complete in itself, and the States consented to the exercise of that power—*in its entirety*—in the plan of the Convention." *Torres v. Tex. Dep't of Pub. Safety*, 597 U.S. 580, 589 (2022) (emphasis added) (quoting *PennEast*, 594 U.S. at 508).

The Elections Clause provides, "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. Const. art. I, § 4, cl. 1. The Elections Clause thus envisions a dual system of regulation of federal congressional elections—the states have a duty to prescribe the times, places, and manner of congressional elections, and Congress may make or alter those regulations. *See Mi Familia Vota v. Fontes*, 129 F.4th 691, 734 (9th Cir. 2025). In consenting to the Constitution, the states did not cede complete authority over federal elections to the federal government. Indeed, although Congress has "exclusive control" to supersede state regulations pertaining to federal congressional elections, *Gonzalez v. Arizona*, 677 F.3d 383, 391 (9th Cir. 2012) (quoting *Colegrove v. Green*, 328 U.S. 549, 554 (1946)), the Elections Clause does not extend to presidential elections, *Fontes*, 129 F.4th at 734–35.

*Torres* teaches that where "the federal regulatory power [is] less than 'complete,'" there is no waiver of sovereign immunity. 597 U.S. at 596. The only cases Plaintiffs cite and the Court has found that determined a state had waived immunity to NVRA suits are nonbinding, out-of-circuit cases that either predate *Torres* or do not construe it. *See Ill. St. Bd. of Elections*, 2024 U.S. Dist. LEXIS 203147, at *26–28; *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 937–39 (C.D. Ill. 2022); Order 2–3, *Ill. Conservative Union v. Illinois*, No. 20 C 5542 (N.D. Ill. Sept. 28, 2021), ECF No. 29.[4] Given the Supreme Court guidance, the Court declines to find a waiver of

---

[4] Plaintiffs filed this decision to the docket in this case at ECF No. 17-2.

sovereign immunity. The claim against the State of California must be dismissed. Because no additional facts could be pleaded to avoid the immunity issue, the Court denies leave to amend.[5]

## IV.  CONCLUSION

For the reasons stated above, the motion is granted in part and denied in part. Judicial Watch's claims are dismissed for want of standing. LPCA's claim against the State of California is dismissed on the basis of sovereign immunity. The Court denies leave to amend the dismissed claims. The motion is otherwise denied.

Secretary Weber shall answer the remaining claim by LPCA for violation of NVRA § 8(a)(4) within 14 days. Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

Dated: July 29, 2025

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

---

[5] As Plaintiffs conceded at the hearing, the practical effect of this dismissal is negligible, as LPCA still may pursue remedies from Secretary Weber.